IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

|                          |   |               |
|--------------------------|---|---------------|
| JEROME HIGTHOWER,        | ✗ |               |
| Plaintiff,               | ✗ |               |
| vs.                      | ✗ | No. 07-2318-B/P |
| SHELBY COUNTY, et al.,   | ✗ |               |
| Defendants.              | ✗ |               |

ORDER GRANTING LEAVE TO PROCEED IN FORMA PAUPERIS
ORDER OF PARTIAL DISMISSAL
ORDER DENYING APPOINTMENT OF COUNSEL
AND
ORDER TO ISSUE AND EFFECT SERVICE OF PROCESS
ON THE REMAINING DEFENDANTS

On May 4, 2007, Plaintiff Jerome Hightower, booking number 06123195, who was, at the time, an inmate at the Shelby County Criminal Justice Complex ("Jail") in Memphis, Tennessee, filed a pro se complaint pursuant to 42 U.S.C. § 1983. (Docket Entry ("D.E.") 1.) On June 1, 2007, Hightower notified the Clerk that he had been released. (D.E. 3.) The Court issued an order on September 10, 2007 directing Plaintiff, within thirty (30) days, to file a nonprisoner in forma pauperis affidavit or pay the civil filing fee. (D.E. 4.) On September 25, 2007, Plaintiff filed an in forma pauperis affidavit, on a form other than the standard nonprisoner form used in this district, that checked both "yes" and

"no" to the question whether he is incarcerated.[1] As it could not be determined whether Hightower was incarcerated and, if he was not incarcerated, that he was unable to pay the civil filing fee or to provide security therefor, the Court issued another order on February 1, 2008 directing him, within thirty (30) days, to file a nonprisoner in forma pauperis affidavit or pay the civil filing fee. (D.E. 6.) Plaintiff complied with the order on February 14, 2008. (D.E. 7.) On the basis of the information set forth in Hightower's most recent affidavit, the motion for leave to proceed in forma pauperis is GRANTED. The Clerk shall record the defendants as Shelby County,[2] Shelby County Sheriff Mark Luttrell, Chief Jailer Robert Moore, and Unit Manager Frankie Davis.

I.  Analysis of Plaintiff's Claims

The complaint asserts several claims based on Plaintiff's previous confinement at the Jail, where he was a pretrial detainee charged with second degree murder. First, Hightower alleges that, on December 27, 2006, another inmate flooded the pod with toilet water and urine. Defendant Davis allegedly instructed Officer Neal, who is not a party to this action, to clean the pod but Neal cleaned only the common areas of the pod and not the individual cells. Plaintiff was forced to remain in a contaminated cell for

---

[1]  The fact that Plaintiff filed a notice of change of address suggested, but did not conclusively establish, that he was not incarcerated, as some inmates choose to receive their mail at a nonprison address.

[2]  The Court construes the allegations about the Jail as an attempt to assert a claim against Shelby County.

2

twelve (12) hours, where he was served his dinner. Plaintiff also was not allowed to shower until the next day.

Second, Hightower complains that, during visits with family members, he was behind a glass partition and forced to communicate through an electronic device.

Third, on four occasions, Plaintiff was locked down for no reason for forty-eight (48) hours at a time.

Fourth, when the inmate was first admitted to the Jail, he was housed in administrative segregation/protective custody, during which time he was not permitted to attend Islamic religious services. Plaintiff alleges that this housing assignment was necessitated by prison overcrowding rather than his behavior while incarcerated. He also complains that he was forced to eat in the restroom toilet area.

Fifth, Plaintiff complains that, on September 18, 2006, there was a dispute between inmates that culminated in one group of inmates throwing feces, some of which landed in his cell. Davis ordered all inmates to be locked down and, as a result, Hightower was unable to mop his cell or take a shower until the next day. He was forced to clean up the feces using pages from a magazine.

Because of these incidents, Plaintiff seeks money damages.

The Court is required to screen prisoner complaints and to dismiss any complaint, or any portion thereof, if the complaint—

    (1)  is frivolous, malicious, or fails to state a claim upon which relief may be granted; or

> (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b); see also 28 U.S.C. § 1915(e)(2)(B). Portions of Plaintiff's complaint are subject to dismissal.

Defendant Luttrell cannot be held liable because of his position as Sheriff of Shelby County. There is no respondeat superior liability under § 1983. Bellamy v. Bradley, 729 F.2d 416, 421 (6th Cir. 1984). Instead,

> [t]here must be a showing that the supervisor encouraged the specific instance of misconduct or in some other way directly participated in it. At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinates.

Id. (citation omitted). A supervisory official who is aware of the unconstitutional conduct of his subordinates, but fails to act, generally cannot be held liable in his individual capacity. Shehee v. Luttrell, 199 F.3d 295, 300 (6th Cir. 1999); Lillard v. Shelby County Bd. of Educ., 76 F.3d 716, 727-28 (6th Cir. 1996). In this case, the complaint contains no allegations that Luttrell "at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinates," Bellamy, 729 F.2d at 421, or that the allegedly unconstitutional conduct described in the complaint was the direct result of the failure of Luttrell to perform a function he was legally obligated to perform, Doe v. Claiborne County, Tenn., 103 F.3d 495, 511-12 (6th Cir. 1996). The standard is not satisfied by allegations that a defendant mishandled a grievance or failed to investigate a

4

complaint. Shehee, 199 F.3d at 300. Therefore, even if it were assumed that one or more Jail employees violated Plaintiff's rights, the Defendant could not be personally liable to Plaintiff. The Court DISMISSES the complaint as to Luttrell, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), for failure to state a claim on which relief may be granted.

The Supreme Court has held that a prison's blanket prohibition on contact visits for pretrial detainees is reasonably related to a legitimate penological objective. Block v. Rutherford, 468 U.S. 576, 585-89 (1984). Thus, "the Constitution does not require that detainees be allowed contact visits when responsible, experienced administrators have determined, in their sound discretion, that such visits will jeopardize the security of the facility." Id. at 589; see also O'Bryan v. County of Saginaw, Mich., 741 F.2d 283, 283 (6th Cir. 1984). The Court therefore DISMISSES that claim, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), for failure to state a claim on which relief may be granted.

Most of Hightower's remaining claims arise under the Eighth Amendment, which prohibits cruel and unusual punishment. See generally Wilson v. Seiter, 501 U.S. 294 (1991).[3] An Eighth

---

[3] Convicted inmates' rights stem from the Eighth Amendment, while pre-trial detainees' rights stem from the Fourteenth Amendment. Thompson v. County of Medina, 29 F.3d 238, 242 (6th Cir. 1994); Roberts v. City of Troy, 773 F.2d 720, 723 (6th Cir. 1985). The scope of a detainee's Fourteenth Amendment rights are equivalent to that of a convicted inmate under the Eighth Amendment. Thompson, 29 F.3d at 242; Roberts, 773 F.2d at 723; see also Rankin v. Klevenhagen, 5 F.3d 103, 107 (5th Cir. 1993); Valencia v. Wiggins, 981 F.2d 1440, 1446 (5th Cir. 1993). See generally Graham v. Connor, 490 U.S. 386, 395 n.10 (1989); Vineyard v. County of Murray, 990 F.2d 1207, 1211-12 (11th Cir. 1993); (continued...)

5

Amendment claim consists of both objective and subjective components. Farmer v. Brennan, 511 U.S. 825, 834 (1994); Hudson v. McMillian, 503 U.S. 1, 8 (1992); Wilson, 501 U.S. at 298; Brooks v. Celeste, 39 F.3d 125, 127-28 (6th Cir. 1994); Hunt v. Reynolds, 974 F.2d 734, 735 (6th Cir. 1992). The objective component requires that the deprivation be "sufficiently serious." Farmer, 511 U.S. at 834; Hudson, 503 U.S. at 8; Wilson, 501 U.S. at 298. The subjective component requires that the official act with the requisite intent, that is, that he have a "sufficiently culpable state of mind." Farmer, 511 U.S. at 834; Wilson, 501 U.S. at 297, 302-03. The official's intent must rise at least to the level of deliberate indifference. Farmer, 511 U.S. at 834; Wilson, 501 U.S. at 303.

To satisfy the objective component of an Eighth Amendment claim, a prisoner must show that he "is incarcerated under conditions posing a substantial risk of serious harm," Farmer, 511 U.S. at 834; Stewart v. Love, 796 F.2d 43, 44 (6th Cir. 1982), or that he has been deprived of the "minimal civilized measure of life's necessities," Wilson, 501 U.S. at 298 (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)). The Constitution "'does not mandate comfortable prisons.'" Wilson, 501 U.S. at 298 (quoting Rhodes, 452 U.S. at 349). Rather, "routine discomfort 'is part of the penalty that criminal offenders pay for their offenses against society.'" Hudson, 503 U.S. at 9 (quoting Rhodes, 452 U.S. at 347).

---

³ (...continued)
Gilland v. Owens, 718 F. Supp. 665, 682-83 (W.D. Tenn. 1989). Plaintiff was a pretrial detainee at the time of the incident in question. As the rights of pretrial detainees are equivalent to those of convicted prisoners, the Court will analyze Plaintiff's claims under Eighth Amendment principles.

In considering the types of conditions that constitute a substantial risk of serious harm, the Court considers not only the seriousness of the potential harm and the likelihood that the harm will actually occur, but evidence that unwilling exposure to that risk violates contemporary standards of decency, *i.e.*, that society does not choose to tolerate this risk in its prisons. <u>Helling v. McKinney</u>, 509 U.S. 25, 36 (1993). The Supreme Court has also emphasized that prisoners can rarely establish an Eighth Amendment violation from a combination of conditions of confinement that, in themselves, do not rise to the level of a constitutional violation:

> <u>Some</u> conditions of confinement may establish an Eighth Amendment violation "in combination" when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise—for example, a low cell temperature at night combined with a failure to issue blankets. . . . To say that some prison conditions may interact in this fashion is a far cry from saying that all prison conditions are a seamless web for Eighth Amendment purposes. <u>Nothing so amorphous as "overall conditions" can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists.</u>

<u>Wilson</u>, 501 U.S. at 304-05 (citations omitted; emphasis added); <u>see also</u> <u>Thompson v. County of Medina, Ohio</u>, 29 F.3d 238, 242 (6th Cir. 1994); <u>Walker v. Mintzes</u>, 771 F.2d 920, 925026 (6th Cir. 1985).

To establish liability under the Eighth Amendment for a claim based on failure to prevent harm to a prisoner, a plaintiff must show that the prison officials acted with "deliberate indifference" to a substantial risk that the prisoner would suffer serious harm. <u>Farmer</u>, 511 U.S. at 834; <u>Helling v. McKinney</u>, 509 U.S. 25, 32 (1993); <u>Woods v. Lecureux</u>, 110 F.3d 1215, 1222 (6th

7

Cir. 1997); Street v. Corrections Corp. of Am., 102 F.3d 810, 814 (6th Cir. 1996); Taylor v. Michigan Dep't of Corrections, 69 F.3d 76, 79 (6th Cir. 1995). "[D]eliberate indifference describes a state of mind more blameworthy than negligence." Farmer, 511 U.S. at 835. Thus,

> [a] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. This approach comports best with the text of the Eighth Amendment as our cases have interpreted it. The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments." An act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage, and if harm does result society might well wish to assure compensation. The common law reflects such concerns when it imposes tort liability on a purely objective basis. . . . But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

Id. at 837-38 (emphasis added; citations omitted); see also Garretson v. City of Madison Heights, 407 F.3d 789, 796 (6th Cir. 2005) ("If the officers failed to act in the face of an obvious risk of which they should have known but did not, then they did not violate the Fourteenth Amendment."). Thus, medical malpractice does not become a constitutional violation merely because the victim is a prisoner. Estelle v. McGuire, 429 U.S. 97, 105-06 (1976); see also Sanderfer v. Nichols, 62 F.3d 151, 154 (6th Cir. 1995) ("Deliberate indifference . . . does not include negligence in diagnosing a medical condition.").

8

With respect to the claim that, on four occasions, Plaintiff was confined to his cell for forty-eight (48) hours at a time, the confinement of inmates to their cells for twenty-three (23) hours a day does not violate the Eighth Amendment, Argue v. Hofmeyer, 80 F. App'x 427, 429 (6th Cir. 2003); see also Coleman v. Bradley, No. 1:07-cv-468, 2007 WL 2461699, at *3 (W.D. Mich. Aug. 27, 2007) (dismissing claim that inmate was confined to his cell from noon to midnight for 30 days); Bagetta v. Carusos, No. 1:07-CV-289, 2007 WL 1577830, at *4 (W.D. Mich. May 30, 2007) (dismissing claim that inmates are confined to their cells on weekdays, because "t]he federal courts have held that similar and even longer periods of cell confinement do not violate the Eighth Amendment"), and the complaint does not allege that Plaintiff was deprived of any basic human need. Thus, this claim does not rise to the level of an Eighth Amendment violation, and it is DISMISSED, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), for failure to state a claim on which relief may be granted.

II. Appointment of Counsel

Plaintiff has also filed a motion seeking appointment of counsel. Pursuant to 28 U.S.C. § 1915(d), the "court may request an attorney to represent any such person unable to employ counsel." However, "[t]here is no constitutional or . . . statutory right to counsel in federal civil cases." Farmer v. Haas, 990 F.2d 319, 323 (7th Cir. 1993), and "§ 1915(d) does not authorize the federal courts to make coercive appointments of counsel" to represent indigent civil litigants, Mallard v. United States Dist. Court, 490

9

U.S. 296, 310 (1989). Generally, a court will only appoint counsel in exceptional circumstances. Willett v. Wells, 469 F. Supp. 748, 751 (E.D. Tenn. 1977). Although "no comprehensive definition of exceptional circumstances is practical," Branch v. Cole, 686 F.2d 264, 266 (5th Cir. 1982), courts resolve this issue through a fact-specific inquiry. Wilborn v. Escalderon, 789 F.2d 1328, 1331 (9th Cir. 1986). Examining the pleadings and documents in the file, the Court analyzes the merits of the claims, the complexity of the case, the pro se litigant's prior efforts to retain counsel, and his ability to present the claims. Henry v. City of Detroit Manpower Dep't, 763 F.2d 757, 760 (6th Cir. 1985); Wiggins v. Sargent, 753 F.2d 663, 668 (8th Cir. 1985).

As a general rule, counsel should be appointed in civil cases only if a litigant has made "a threshold showing of some likelihood of merit." Cooper v. A. Sargenti Co., 877 F.2d 170, 174 (2d Cir. 1989).[4] At this stage of the proceedings, before the Court has had the opportunity to assess the strength of Plaintiff's case, the Court is unable to conclude that Plaintiff has satisfied that standard. A review of this complaint indicates that the case is not so complex that the Court should exercise its discretion to appoint counsel at this time. The motion for appointment of counsel is, therefore, DENIED.

---

[4] The Second Circuit has elaborated: "Courts do not perform a useful service if they appoint a volunteer lawyer to a case which a private lawyer would not take if it were brought to his or her attention. Nor do courts perform a socially justified function when they request the services of a volunteer lawyer for a meritless case that no lawyer would take were the plaintiff not indigent." Id.

III. <u>Issuance of Process</u>

It is ORDERED that the Clerk shall issue process for the remaining Defendants and deliver said process to the marshal for service. Service shall be made on Shelby County pursuant to Fed. R. Civ. P. 4(j)(2) and Tenn. R. Civ. P. 4.04(7). Service shall be made on the individual Defendants pursuant to Fed. R. Civ. P. 4(e) and Tenn. R. Civ. P. 4.04(1) & (10), either by mail or personally if mail service is not effective. All costs of service shall be advanced by the United States. The service on Defendants shall include a copy of this order.

It is further ORDERED that Plaintiff shall serve a copy of every document filed in this cause on the attorneys for each Defendant or on any unrepresented Defendant. Plaintiff shall make a certificate of service on every document filed. He shall familiarize himself with the Federal Rules of Civil Procedure and this Court's local rules.

Hightower shall promptly notify the Clerk of any change of address or whereabouts. Failure to comply with these requirements, or any other order of the Court, may result in this case being dismissed without further notice.

IT IS SO ORDERED this 29th day of March, 2008.

<u>s/ J. DANIEL BREEN</u>
UNITED STATES DISTRICT JUDGE